**The court incorporates by reference in this paragraph and adopts as the findings and analysis of this court the document set forth below. This document has been entered electronically in the record of the United States Bankruptcy Court for the Northern District of Ohio.**



**Dated: September 27 2019**

John P. Gustafson
United States Bankruptcy Judge

## UNITED STATES BANKRUPTCY COURT
### NORTHERN DISTRICT OF OHIO
### WESTERN DIVISION

| | | |
|---|---|---|
| In Re: | ) | Case No. 14-32796 |
| | ) | |
| Robert Clyde Zimpher | ) | Chapter 7 |
| Marilyn Kay Zimpher | ) | |
| | ) | |
| Debtors | ) | JUDGE JOHN P. GUSTAFSON |

## <u>MEMORANDUM OPINION AND ORDER RE: OBJECTION TO</u>
## <u>CLAIM OF CHASE BANK USA, N.A.</u>

This cause comes before the court on the Debtors' Objection to Claim of Chase Bank USA, N.A. Claim No. 6 [Doc. #38], and Trustee's Response to Debtors' Objection to Claim [Doc. #45]. On May 22, 2019 a hearing was held on the Debtors' Objection to Claim and the Response. The parties were provided with an opportunity to file briefs in support of their respective positions. [Doc. #47]. Debtors filed their Brief in Support of Objection to Claim of Chase Bank USA, N.A. [Doc. #49]. Subsequently, the Memorandum Brief of Trustee with Regard to Debtors' Objection to the Proposed Payment of Claim No. 6 by the Trustee was filed [Doc. #50], and the matter became decisional.

### FACTS

The facts relevant to the court's decision do not appear to be in dispute. [Doc #50, p. 1].

The Debtors' case was commenced by the filing of a Chapter 7 Petition on July 30, 2014. [Doc.

1

#1. Doc. #49, p. 1].   It was closed as a no-asset case on November 25, 2014. [Doc. #19, Doc. #49, p. 1]. The Debtors filed a Motion to Reopen Chapter 7 Case on September 9, 2017, "to schedule an unscheduled asset." [Doc. #20].   An Order was entered granting the Debtors' Motion, and reopening the case. [Doc. #21].

Amended Schedules A/B and Summary of Schedules were filed, listing "Actos Claim WL#142647 Class action suit" [Doc. #23, p. 8].   On October 18, 2017, the Trustee filed a Request for Notice to Creditors, based upon the newly disclosed asset. [Doc. #24].   Pursuant to Federal Rule of Bankruptcy Procedure 3002(c)(5), the court granted the Trustee's Request for Notice, and through the Bankruptcy Noticing Center issued Notice of Need to File Proof of Claim Due to Recovery of Assets. [Doc. #25 & #26].   The last date for filing a timely proof of claim was set for January 29, 2018. [*Id*.]. The Notice stated that: "Creditors who do not file a proof of claim on or before the last date to file claims will not share in distribution." [*Id*.].

A Trustee's Final Asset Report and Application for Compensation was filed on September 9, 2018. [Doc. #29].   On or about October 16, 2018, the Trustee made distributions to creditors with timely filed allowed claims. [Doc. #35, p. 2].

On November 13, 2018, the Trustee received two refund checks from Second National Bank. [*Id*.]   The two refund checks were in the amounts of $160.49 and $3,641.88. [*Id*.].

The Debtors assert that: "the Debtors subsequent to the Chapter 7 Bankruptcy Discharge had voluntarily paid the obligation to Second National Bank, however, said Creditor did not withdraw its Proof of Claim.   The funds held by the Trustee are those returned funds." [Doc. #49, p. 2].

Based on these returned funds, Trustee's Motion to Extend For Thirty (30) Days The Period Of Time During Which Creditors May File Proofs Of Claims For Surplus Funds was filed. [Doc. #36]. This Motion was denied, based upon the reasons set forth in *In re Cisneros*, 2018 WL 4473621, 2018 Bankr. LEXIS 2859 (Bankr. N.D. Ohio September 17, 2018) and *In re Franklin*, 2018 WL 4688315, 2018 Bankr. LEXIS 2962 (Bankr. N.D. Ohio September 26, 2018). [Doc. #37].   While these decisions denied motions requesting that the court set a deadline for filing late claims for surplus funds in voluntary Chapter 7 cases, they do not prohibit a Chapter 7 trustee from providing listed creditors with a notice of the existence of surplus funds.

The Trustee sent out a "Memorandum" on his own letterhead, captioned "Notice of Extension of Time to File Claims against Surplus Funds".   [Doc. #49, Ex. E, p. 27].   The Notice states: "The Trustee further advises that claims against the surplus funds may be filed for a period of thirty (30) days from the

2

date of this notice." [*Id.*].

On March 28, 2019, Chase Bank USA, NA ("Chase") filed a claim for $8,078.27. [Claims Register, Doc. #6-1]. There is no dispute that Chase's proof of claim is a late filed claim. The Debtors assert that the claim was filed 31 days after the Trustee's Notice, and therefore outside the time stated in the Notice.

In addition, the Debtors' Brief In Support of Objection to Claim of Chase Bank USA, NA, states that: "Pursuant to 11 U.S.C. Section 502(6), the Trustee should have forwarded the funds returned to the Debtors, . . .". [Doc. #49, p. 2]. While there is no Section 502(6)[1], the Debtors' position appears to be that the Trustee is "utilizing returned funds that are rightfully the Debtors." [Doc. #49, p. 3].

The Debtors also argue that tardily filed claims cannot be paid when the Chapter 7 Trustee has filed a Final Report. [Doc. #49, p. 3]. "The Final Report was approved by this Court and has not been vacated or withdrawn." [*Id.*].

The Trustee's Memorandum Brief of Trustee with Regard to Debtors' Objection to the Proposed Payment of Claim No. 6 by the Trustee cites to the benefits received by the Debtors in this case, and the history of this court granting Motions to issue notices of surplus funds.

The Trustee specifically asserts that Chase's "tardily filed claim, under 11 U.S.C. Section 726(a)(3), is properly characterized as a claim to be paid ahead of returning funds to the debtors." [Doc. #50, p. 2].

Although acknowledging that they are not directly on point, the Trustee cites: *Czyzewski v. Jevic Holding Corp.*, ___ U.S. ___, 137 S.Ct. 973, 197 L.E.2d 398 (2017); *In re Rothman*, 373 B.R. 785 (Bankr. S. D. Ga. 2006); and *In re Rago*, 149 B.R. 882 (Bankr. N. D. Ill. 1992).

## LAW AND ANALYSIS

The Debtors assert that the monies were returned by Second National Bank because they paid off the debt owed to the Bank after their discharge was granted. Accepting that explanation, which has not been disputed by the Trustee, there are two sections of the Bankruptcy Code that appear to relevant.

Section 502(e) provides standards for the allowance and disallowance of claims for reimbursement or contribution. 4 Collier on Bankrutpcy, ¶502.06[1], at 502-59 (16th Ed. 2009). The statute states that "the court shall disallow any claim for reimbursement or contribution" unless certain

---

1/ It appears that the intended citation may be to Section 726(a)(6), which provides for the distribution priority in Chapter 7 cases. The sixth priority for distribution is "to the debtor." *See*, 11 U.S.C. Section 726(a)(6). However, Section 726(a)(3) provides a higher distribution priority for the "payment of any allowed unsecured claim proof of which is tardily filed under section 501(a) of this title. . .".

14-32796-jpg    Doc 51    FILED 09/27/19    ENTERED 09/27/19 16:14:20    Page 3 of 7

criteria are met. *See*, 11 U.S.C. Section 502(e).  For a claim of reimbursement or contribution to be allowed it must be asserted by "an entity that is liable with the debtor".  In other words, a "codebtor". *See generally*, *Matter of Baldwin-United Corp.*, 55 B.R. 885 (Bankr. S.D. Ohio 1985)(using the term "codebtor" in connection with Sections 502(e) and 509).

In addition to claims for "reimbursement or contribution" under §502(e), the same requirement – that the claimant be "an entity that is liable with the debtor" – is found in §509, captioned "Claims of codebtors".  While the term "codebtor" has been broadly interpreted, it does not appear that a debtor can be considered their own "codebtor".  Nor can the specific language of Sections 502(e) and 509(a) be stretched to the point where the phrase "an entity that is liable with the debtor" can include a debtor him or herself.

First, "debtor" is a defined term. *See*, 11 U.S.C. §101(13).  "The term 'debtor' means person or municipality concerning which a case under this title has been commenced." *Id*.  While there is no definition of "codebtor" in the Code[2], it is a term that is used in several places, including in the titles to §1201 and §1301 – the "codebtor stay".  In defining who is protected, both codebtor stay provisions use language stating that it is an "individual that is liable on such debt with the debtor". *See*, §§1201(a) & 1301(a).  This language, and the plain meaning of the term "codebtor", support the concept that a codebtor is a second entity, liable with the debtor, not the debtor.

This common sense understanding is reflected in, for example, the filing of motions for relief from stay in individual Chapter 13 cases.  Where there is no other individual liable on a consumer debt, creditors only need to seek relief from the stay under Section 362, they do not have to seek relief from the codebtor stay under Section 1301 because the debtor does not also qualify as a codebtor under the codebtor stay provision.

Thus, there are specific Bankruptcy Code provisions, §§502(e) and 509, that apply to codebtors, but do not, by their terms, apply to a debtor in bankruptcy.  Sections 502(e) and 509 deal with the type of claim asserted here, a claim based upon reimbursement or contribution, or on subrogation.  If a codebtor had paid off the claim of Second National Bank, the court would analyze the claim for "reimbursement or contribution" under §502(e).  If the claim for such payment were viewed as one based upon "subrogation", the claim would be determined under §509[3].  However, the debtor is not a

---

2/  *See*, *In re Bigalk*, 75 B.R. 561, 565 (Bank. D. Minn. 1987); *In re Jett*, 198 B.R. 489, 490 (Bankr. E.D. Ky. 1996).

3/  "[S]ection 509 acts as a narrow, equitable backstop to ensure that a codebtor will receive some distribution (specifically the original creditor's distribution) from the debtor's estate if the codebtor pays a creditor's claim." *In re Scott*, 572 B.R. 492, 534 (Bankr. S.D.N.Y. 2017)(*quoting*, *Prim Capital Corp. v. May (In re May )*, 2006 WL 4458360 at *6, 2006 LEXIS Bankr.

4

"codebtor", and therefore fails the meet the requirement of being "liable with the debtor" that is a threshold requirement for both of these provisions.

Debtors have attempted to use §509 to justify the filing of a priority claim[4], on behalf of the debtor, based upon the debtor's post-filing payment of taxes. Courts have generally rejected these types of claims. *See*, *In re Lettieri*, 506 B.R. 208, (Bankr. W.D.N.Y. 2014); *In re Frankum*, 399 B.R. 498 (Bankr. E.D. Ark. 2009)(no claim under §509 for involuntary post-filing payment based upon levy of social security benefits); *In re Hagen*, 147 B.R. 166, 167-168 (Bankr. N.D. Iowa 1992); *In re Tygrett*, 72 B.R. 129, 130 (Bankr.C.D.Ill.1987); *In re Eble*, 14 B.R. 11 (Bankr. W.D.N.Y. 1981); *and c.f.*, *In re Oliver*, 511 B.R. 556 (Bankr. W.D. Wis. 2014); *In re Sarnovsky*, 436 B.R. 461 (Bankr. N.D. Ohio 2010)(reaching the same result without reference to §509). Further, it is a generally accepted principle of subrogation law that "[a] right to subrogation exists only when the subrogee pays or discharges a debt for which another is liable. One cannot seek subrogation for paying one's own debts." *Rubenstein v. Ball Bros., Inc. (In re New England Fish Co.)*, 749 F.2d 1277, 1282 (9th Cir. 1984).

Accordingly, there is no statutory provision that would allow the Debtors a claim, based upon their payment of the Second National Bank debt, that would be of a higher priority than the Debtors' right to the distribution of excess funds under 11 U.S.C. §726(a)[5].

Instead, it appears that the Debtors are requesting that the court utilize its equitable powers to provide them with rights similar to what a codebtor would have under §502(e) and §509. However, recent Supreme Court decisions clearly state that the Bankruptcy Code's provisions limit a bankruptcy court's equitable powers. *See*, *Law v. Siegel*, 571 U.S. 415, 427, 134 S.Ct. 1188, 1198, 188 L.Ed.2d 146 (2014)("it is not for courts to alter the balance struck by statute.")[6].

---

4196 at *19 (Bankr. N.D. Ohio, Aug. 14, 2006), *aff'd* 368 B.R. 85 (6th Cir. BAP 2007)). The *Scott* decision also noted that §509 only applies to situations where the payment is made post-petition, "otherwise there would be nothing to subrogate because a pre-petition payoff to the creditor would leave the creditor with no claim against the estate." *Id*, *quoting*, *Stephenson v. Salisbury (In re Matter of Corland Corp.)*, 967 F.2d 1069, 1078 (5th Cir. 1992).

4/ Notably, in this case, the Debtors did not file a proof of claim.

5/ "By seeking payment for the Debtors ahead of other creditors, the claim proposes an impermissible inversion of the order of priority set forth in section 726(a)." *Oliver*, 511 B.R. at 559-560.

6/ An additional point, made in *Sarnovsky*, is that: "It is not equitable because the Debtors are seeking to subordinate allowed claims to their interests, going against the Bankruptcy Code's priority scheme which is, itself, founded on principles of equity. *See*, *e.g.*, *Braunstein v. McCabe*, 571 F.3d 108, 118 (1st Cir. 2009) ("the bankruptcy estate is distributed in accordance with the scheme of priorities set out in the Bankruptcy Code, and the nature of bankruptcy is equity.")." *Sarnovsky*, 436 B.R. at 465. The distribution of estate funds to creditors in accordance with the priorities established by the Bankruptcy Code is a feature, not a bug. *See*, *Czyzewski v. Jevic Holding Corp.*, ___ U.S. ___, 137 S.Ct. 973, 197 L.Ed.2d

Here, the Debtors could have potentially structured their payment of the debt owed to the Second National Bank in a way that transferred the Bank's claim to them. *See e.g.*, *In re Kreisler*, 546 F.3d 863 (7th Cir. 2008). However, they did not do so, and their failure to acquire that right to payment has consequences that this court cannot undo under the existing statutory framework of the Code.

In short, the funds were returned and are property of the bankruptcy estate, subject to the Chapter 7 distribution priorities established by §726(a). Those priorities place the Debtors at a lower level than the late filed claims of creditors. *Compare*, §726(a)(3) & §726(a)(6). Accordingly, if Chase's late filed claim is entitled to be paid under §726(a)(3), the Debtors' Objection to Claim of Chase Bank USA, N.A. Claim No. 6 [Doc. #38] should be denied.

The Debtors make additional arguments as to why the Chase claim is not entitled to be paid as a late-filed claim under §726(a)(3). Specifically, they assert that either the Trustee's notice to creditors regarding surplus funds was somehow improper, or that the failure of Chase to file their claim within the 30 day timeframe set forth in the Trustee's notice should bar payment of the Chase claim.

Neither of these arguments are persuasive.

As previously noted, the denial of the Trustee's Motion to Extend For Thirty (30) Days The Period Of Time During Which Creditors May File Proofs Of Claims For Surplus Funds [Doc. #36] was based upon the reasons stated in *In re Cisneros*, 2018 WL 4473621, 2018 Bankr. LEXIS 2859 (Bankr. N.D. Ohio September 17, 2018) and *In re Franklin*, 2018 WL 4688315, 2018 Bankr. LEXIS 2962 (Bankr. N.D. Ohio September 26, 2018). [Doc. #37]. The denial of that Motion included the language that it was "without prejudice as to whether the Trustee issues his own notice to creditors." [Doc. 37, p.2].

The Trustee's issuance of notice to creditors of the existence of surplus funds avoided two of the concerns Judge Whipple expressed in *Cisneros* and *Franklin* about the ex-parte issuance of such notices by this court – that the court lacked explicit statutory authority to set a deadline for late filed claims[7], and that the court should not be incurring the expense of sending the notice[8].

---

398 (2017). "The Code makes clear that distributions of assets in a Chapter 7 liquidation must follow this prescribed order." *Jevic*, 137 S.Ct. at 979, 197 L.Ed.2d at 405-406. "The priority system applicable to those distributions has long been considered fundamental to the Bankruptcy Code's operation." *Jevic*, 137 S.Ct. at 984, 197 L.Ed.2d at 410.

7/ *Cisneros*, 2018 WL 4473621 at *4, 2018 Bankr. LEXIS 2859 at *12; *Franklin*, 2018 WL 4688315, 2018 Bankr. LEXIS 2962 at *3.

8/ *Cisneros*, 2018 WL 4473621 at *5, 2018 Bankr. LEXIS 2859 at *13; *Franklin*, 2018 WL 4688315 at *2, 2018 Bankr. LEXIS 2962 at *5-*6.

Two recent decisions holding that courts should not issue notices, or set deadlines, in Chapter 7 cases where there are surplus funds also held that the Chapter 7 trustee may provide creditors with such notice. *See*, *In re Collins*, 2014 WL 1682868, *2, 2014 Bankr. LEXIS 1939, *7 (Bankr. N.D.W. Va. April 29, 2014)[9]; *In re Austin*, 2016 WL 5819807, *3, 2016 Bankr. LEXIS 3632, *7 (Bankr. W.D. Va. Oct. 5, 2016)(following *Collins*).

However, while a Chapter 7 trustee may provide notice to creditors of the existence of surplus funds, such notice cannot alter the Bankruptcy Code's provisions governing distributions. The "deadline" in the Chapter 13 Trustee's notice could not change the statute that states that late filed non-priority unsecured claims in a Chapter 7 case are allowed claims. *See*, §502(b)(9). Nor could it change §726(a)(3), which expressly provides for the payment of late filed claims ahead of returning "surplus funds" to the Debtors.

At some point, a late filed unsecured claim in a Chapter 7 case would be too late – perhaps after a distribution has been calculated, or the Trustee has printed checks, or after those checks are mailed, or after enough checks have been cashed to prevent a ratable distribution, or after all the distribution checks have cleared. But here, there has been no assertion that there is an undue administrative burden, or that it is impossible, for the Trustee to pay the Chase claim. The absence of any language in §726(a)(3) with specific time limitations could make that a difficult issue in other situations. But that issue is not presented in this case. The "30 day" limitation in the Trustee's notice is simply irrelevant in the light of the statutory language which provides a higher priority to a creditor's "tardily filed" unsecured claim than the priority accorded "to the debtor" under §726(a)(3).

Accordingly, for all of the reasons stated above, it is

**ORDERED** that the Debtors' Objection to Claim of Chase Bank USA, N.A. Claim No. 6 [Doc. #38] is Denied.

---

9/ "[A]lthough the Bankruptcy Code and Rules do not explicitly support a second solicitation of claims emanating from the court or Clerk, the Trustee's duty to "collect and reduce to money the property of the estate for which such trustee serves, and close such estate as expeditiously as is compatible with the best interests of parties in interest," § 704(a)(1), may include keeping a bankruptcy estate, like the Debtors' estate, open for a reasonable period of time and soliciting tardily-filed proofs of claims from creditors. Such action rests in the sound business judgment of the trustee, . . ." *Collins*, 2014 WL 1682868 at *2, 2014 Bankr. LEXIS 1939 at *7.